UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON DESEAN FLAKE,

                  Petitioner,

v.

THOMAS WINN,

                  Respondent.

_____/

Case No. 2:16-cv-12359

HONORABLE STEPHEN J. MURPHY, III

**OPINION & ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1],
DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS**

Michigan prisoner Aaron Desean Flake ("Petitioner") was convicted of arson of a dwelling, under Mich. Comp. Laws § 750.72, following a 2013 jury trial in the Wayne County Circuit Court. ECF 8-11, PgID 1421. He was sentenced to between 10 years, 8 months' and 20 years' imprisonment. ECF 8-13, PgID 1459. On June 23, 2016, Petitioner filed a habeas petition, in which he raises claims concerning the composition of the jury, the impartiality of the jury and the effectiveness of trial counsel, the admission of video surveillance evidence, the sufficiency of the evidence, and the validity of his sentence. ECF 1. For the following reasons, the Court will deny the habeas petition. The Court will also deny a certificate of appealability and leave to proceed in forma pauperis on appeal.

# BACKGROUND

The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from an incident that occurred in Detroit on November 17, 2012. On that evening, there was a fire in a Detroit home. After the fire was contained, a resident of the home was found dead inside. It was determined, however, that the victim died from three gunshots [sic] wounds incurred before the fire was started. The prosecution alleged that defendant, who was seen at the home on the night of the fire, perpetrated the murder and arson. Surveillance footage from a church across the street from the residence was downloaded and admitted at trial. The footage showed two individuals arriving at the home in a two-door vehicle before the fire and leaving the home after the fire was set. Defendant was ultimately convicted of arson.

*People v. Petitioner*, No. 317325, 2014 WL 6602604, *1 (Mich. Ct. App. Nov. 20, 2014).

At the close of trial, the jury convicted Petitioner of arson, but acquitted him of first-degree murder and felony firearm. Following his conviction and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims, including the claims presented on habeas review. The court denied relief on those claims and affirmed his conviction and sentence. *Petitioner*, 2014 WL 6602604 at *1–7. The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Petitioner*, 497 Mich. 1029 (2015).

Petitioner thereafter filed his federal habeas petition. ECF 1. He raises the following five claims:

I. The prosecutor's exercise of peremptory challenges to exclude two members of from a jury pool that was severely under-represented with African-American jurors violated his constitutional right to equal protection of the laws.

II.     He was denied a fair trial and impartial jury under the federal constitution where, during the trial, one of the jurors became concerned that a spectator in the courtroom had been involved in witness intimidation in an unrelated case where she was on the jury, and counsel failed to request a mistrial and the court failed to interview the other jurors to determine if this information had been disclosed to the other jurors.

III.    The trial court denied him due process of law when the trial court allowed the admission of inadmissible and highly prejudicial surveillance video footage.

IV.     He was denied due process of law when he was convicted based on insufficient evidence.

V.      The court violated his due process rights in imposing a sentence that amounted to cruel and unusual punishment.

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). A merely "incorrect or erroneous" application is insufficient. *Id.* "A state court's determination that a claim lacks merit

3

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Finally, a federal habeas court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may successfully rebut the presumption only by clear and convincing evidence. *Id.*

## DISCUSSION

I.    <u>*Batson*</u> Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor used peremptory challenges to improperly exclude two African-American women from the jury pool.

Although a criminal defendant has no right to have a member of a particular race on the jury, he or she does have the right to be tried by a jury whose members

are selected by non-discriminatory criteria. *See Powers v. Ohio*, 499 U.S. 400, 404 (1991). The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986).

To establish a prima facie case of purposeful discrimination in the selection of a jury based on the prosecutor's exercise of peremptory challenges, a defendant must show that he or she is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. *Id.* at 94. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. *Id.* at 96. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Id.* at 96–97.

Once the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. A "race neutral" explanation is one based upon something other than the juror's race. *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991).

If a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98. The ultimate question of discriminatory intent concerns an evaluation of the prosecutor's credibility. Such a decision represents a factual finding accorded

great deference on appeal, which will not be overturned unless clearly erroneous. *See Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003). The defendant bears the final burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

The Michigan Court of Appeals denied Petitioner relief on his *Batson* claim, reasoning that the trial court properly accepted the prosecution's race-neutral justifications for excusing two African-American women from the jury. *Petitioner*, 2014 WL 6602604 at *3–4. As to the first juror, she stated that she could be fair, but also admitted that she would need scientific evidence to convict the defendant in the case. *Id.* The prosecution cited concern for bias with this juror because the State had no scientific evidence linking the defendant to the arson. *Id.* The second juror worked for the National Archive of Criminal Justice Data at the University of Michigan and stated that "the [justice] system itself does not work." *Id.* In dismissing this juror, the prosecution cited her statements about and problems with the justice system. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal evidence of purposeful discrimination by the prosecutor in exercising the contested peremptory challenges. The mere fact that the prosecutor used peremptory challenges to excuse two African-American women from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988). Petitioner points to no facts to support his *Batson* claim. Moreover, the record demonstrates that the relevant circumstances negate an inference of discrimination. The prosecutor did not question

any of the jurors in an unusual, distinct, or discriminatory manner, nor did the prosecutor make any comments reflecting bias or discriminatory intent.

Nonetheless, the Court is aware that both the trial court and the Michigan Court of Appeals proceeded to the second step of the *Batson* analysis. The Court must therefore determine whether the state courts reasonably determined that the prosecution provided a race-neutral explanation for the peremptory challenges and concluded that no *Batson* violation occurred. The record indicates that the prosecution had sufficient, non-discriminatory reasons to excuse the jurors at issue here—the first juror's views concerning scientific evidence and the second juror's work and opinions involving the criminal justice system (including the Wayne County system). *Petitioner*, 2014 WL 6602604 at *3–4. The trial court and the Michigan Court of Appeals reasonably applied *Batson* to Petitioner's case and denied his claim. Habeas relief is not warranted on Petitioner's *Batson* claim.

II. <u>Jury Bias Claim</u>

Petitioner next asserts that he is entitled to habeas relief due to possible jury bias. A juror became concerned mid-trial that two witnesses (Willie Bell and Brenda Knight) in Petitioner's trial may have been witnesses in an unrelated murder trial three years earlier in which she had served as a juror. She also recognized a spectator in the courtroom whom she believed had intimidated witnesses in the prior trial. The Michigan Court of Appeals described the relevant facts as follows:

> The juror believed the spectator had been involved in witness intimidation in a previous trial in which she participated as a juror. The juror explained that she "stiffened up" and was "real nervous" because of spectator's presence. Several jurors asked her if she was okay. The

> juror told the court that although she did not mention who made her nervous, the other jurors "knew it was a spectator" and "it was obvious who it was." However, she told the other jurors that her concern was unrelated to the trial. Further, she had no concerns about witness intimidation in this case, and she was even willing to remain as a juror as long as the spectator was not called as a witness. Based on the information, all parties and the trial court agreed to dismiss the juror.

*Petitioner*, 2014 WL 6602604 at *4. Petitioner asserts that he is entitled to habeas relief because: (1) the trial court failed to interview the remaining jurors for potential bias; and (2) trial counsel failed to request a mistrial and/or an evidentiary hearing.

### A. *Trial Court Error*

Petitioner asserts that the trial court erred by failing to interview the remaining jurors for potential bias. Respondent contends that Petitioner waived and procedurally defaulted the claim. Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263–64 (1989). The last reasoned state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991).

In denying relief on the judicial error claim, the Michigan Court of Appeals relied upon a state procedural bar—defense counsel's suggestion and agreement that the juror in question be dismissed as the appropriate remedy for the situation—which the court found to constitute a waiver of this issue. *Petitioner*, 2014 WL 6602604 at *5. The Michigan Court of Appeals was the last reasoned state court ruling on Petitioner's claim. The failure to make a contemporaneous objection is a firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763 (1999). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied Petitioner relief because it found that he procedurally defaulted the claim by agreeing to the dismissal of the juror as the appropriate remedy for the situation.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753. To establish cause, a petitioner must establish that some external impediment frustrated his ability to

comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Here, Petitioner alleges ineffective assistance of trial counsel as cause to excuse his waiver/default, essentially claiming that counsel should have moved for a mistrial due to the juror's situation and/or requested an evidentiary hearing to determine if the remaining jurors were biased. As explained *infra*, however, Petitioner fails to show that trial counsel erred and/or that he was prejudiced by his counsel's conduct. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Nonetheless, the Court notes that Petitioner cannot establish that he was prejudiced because, as discussed by the Michigan Court of Appeals and further explained *infra*, the underlying claim lacks merit.

Petitioner also fails to establish that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires a petitioner to

support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner makes no such showing. The claim is therefore procedurally defaulted, lacks merit, and does not warrant habeas relief.

### B. Ineffective Assistance Claim

Petitioner asserts that trial counsel was ineffective for failing to seek a mistrial and/or request an evidentiary hearing on the jury bias issue. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. The Court conducts a two-prong analysis to determine whether a habeas petitioner has received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient. He must show that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced his defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.*

at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.*

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

A federal court's habeas review of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited due to the deference accorded both to trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Applying the *Strickland* standard, the Michigan Court of Appeals considered the merits of Petitioner's ineffective assistance claim—and consequently the underlying judicial error claim—and denied relief. *Petitioner*, 2014 WL 6602604 at *5. The court reasoned that "it was not unprincipled for the court to dismiss the juror and continue with the trial" because there "was no showing that the juror's reaction

negatively impacted the other jurors or created any prejudice toward defendant." *Id.*
The court further explained that "Defendant only speculates at the unknown
thoughts of the other jurors and does not show impartiality," and therefore there were
no grounds for a mistrial. *Id.* As to the ineffectiveness of counsel, the court found that
trial counsel could not be ineffective for failing to bring a meritless motion. *Id.* (citing
*People v. Hardy*, 494 Mich. 430, 445 (2013)).

The state court's decision was neither contrary to Supreme Court precedent
nor an unreasonable application of federal law or the facts. Counsel's agreement to
dismiss the juror without calling for a mistrial or further inquiry into potential bias
of the remaining jurors was reasonable under the circumstances of this case.

"The Sixth and Fourteenth Amendments guarantee a criminal defendant an
impartial jury in state court." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008)
(citing *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6 (1976)). Jurors, however, are presumed
to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing
*Irvin*, 366 U.S. at 723), and "due process does not require a new trial every time a
juror has been placed in a potentially compromising situation . . . . Due process means
a jury capable and willing to decide the case solely on the evidence before it . . . ."
*Smith v. Phillips*, 455 U.S. 209, 217 (1982). A petitioner bears the burden of proving
jury bias. *United States v. Wheaton*, 517 F.3d 350. 362 (6th Cir. 2008).

A trial court has broad discretion to grant or deny a motion for a mistrial—and
a mistrial is warranted only upon a showing of manifest necessity. *See Arizona v.
Washington*, 434 U.S. 497, 506–10 (1978) (mistrial due to deadlocked jury). "Manifest

necessity" means a "high degree" of necessity. *Arizona*, 434 U.S. at 506. The Supreme Court has confirmed the significant deference due a trial court's decision to grant or deny a mistrial, as well as the further deference due the state appellate court's decision on that issue, on federal habeas review. *See Renico v. Lett*, 559 U.S. 766, 772–74 (2010) (reversing grant of habeas relief on claim contesting state trial court's grant of a mistrial due to a deadlocked jury).

A criminal defendant who alleges implied juror bias is entitled to a hearing in which he or she has "the opportunity to prove actual bias." *Smith*, 455 U.S. at 215. To be entitled to such a hearing, however, a defendant must do more than simply raise the possibility of bias. *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998). A defendant must raise a "colorable claim of extraneous influence" to warrant a hearing into possible jury bias. *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999). An "extraneous influence" is defined as "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Herndon*, 156 F.3d at 636.

Here, the record shows that there was no manifest necessity warranting a mistrial or colorable claim of extraneous influence with respect to the remaining jurors. When the dismissed juror came forward with her concerns, the trial court and the parties questioned her in some detail. ECF 7, PgID 101. The juror stated that she became nervous when she saw the spectator because she believed that he may have been involved in witness intimidation during the prior, unrelated trial. *Id.* at 100. She said that other jurors noticed her discomfort when she walked by the spectator

and "stiffened up" and did not want to wait for the elevator. *Id.* at 101. When the jurors asked her if something was bothering her, she told them that it was not the trial. *Id.* While the juror believed that the other jurors knew it was the spectator, she did not tell them anything specific about the case. *Id.* She did not have concerns about witness intimidation in the current trial and said that she could be fair as long as the spectator (who was not a witness) did not testify. *Id.*

Given such circumstances, trial counsel (and the trial court) reasonably determined that dismissal of the juror at issue sufficiently remedied the situation and that neither a mistrial nor an evidentiary hearing or interview of the remaining jurors was necessary for a fair trial. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless motion or objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Petitioner also fails to show that he was prejudiced by counsel's conduct. There is no evidence that the remaining jurors were biased against him. His concerns are purely speculative. And conclusory allegations are insufficient to warrant federal habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007). Moreover, any potential prejudice to Petitioner was mitigated by the fact that the trial court instructed the remaining jurors that they should not make any inferences about the case based upon the juror's dismissal. *See Petitioner*, 2014 WL 6602604, at *5. Jurors are presumed to follow a court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Petitioner

fails to establish that the trial court erred and/or that trial counsel was ineffective under the *Strickland* standard.[1] The Court will therefore deny Petitioner habeas relief on his jury bias claims.

III.  Evidentiary Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the surveillance video footage. Specifically, Petitioner asserts that an admitted video was prejudicial and perhaps incomplete, that police opinion testimony about the video was improper, and that the chain of custody for the video was incomplete.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69–70).

The Michigan Court of Appeals denied Petitioner relief on his evidentiary claim because the surveillance video footage and related testimony was properly admitted under state law. *Petitioner*, 2014 WL 6602604 at *1–2. The court reasoned

---

[1] Given Petitioner's failure to meet his burden on the ineffective assistance claim, the Court need not address the exhaustion issue.

16

that the video itself was relevant under Mich. R. Evid. 403 because it showed the crime occurring, and that it was not "marginally probative" because it directly "tends to prove that two individuals committed arson, the time they arrived and left the scene, and details about the vehicle in which they were traveling." *Id.* Additionally, the police opinion testimony regarding the video was proper because it was rationally based on the officer's perceptions of the video, helpfully deciphered footage shot by an infrared camera for the jury, and never identified the defendant shown on the footage. *Id.* The officer further helped explain timestamp discrepancies in the video. *Id.* Finally, the court found that there was no issue with the chain of custody of the recording because the prosecution "properly demonstrated the video was what it claimed to be" and properly outlined how it came to be at the trial. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting the surveillance video footage under the Michigan Rules of Evidence or any other provision of Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *See Estelle*, 502 U.S. at 67–68. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Second, with respect to federal law, Petitioner fails to establish a constitutional violation. The surveillance video footage was highly relevant and admissible under state law given that it depicted the crime as it occurred. It showed the two men who

17

committed the crime, their vehicle, and the time and date of the crime. Petitioner fails to show that the admission of the surveillance video footage rendered his trial fundamentally unfair.

The police technician's opinion testimony regarding the video was also relevant and admissible. Under Michigan law, lay opinion testimony is admissible if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Mich. R. Evid. 701. The opinions and reliable conclusions of investigating police officers who have not been qualified as experts is admissible under Michigan law when the testimony is based on observations and is not dependent on scientific expertise. *See People v. Oliver*, 170 Mich. App. 38, 49-50, 427 N.W.2d 898 (1988). In this case, the police technician's testimony was based upon his review of the surveillance video and was intended to assist the jury in understanding the video. The jury was able to review the video and the police technician did not identify Petitioner or otherwise invade the province of the jury in making factual determinations. The admission of the police technician's testimony did not render the trial fundamentally unfair.

Petitioner's chain of custody argument merely alleges a violation of state evidentiary rules. Consequently, he fails to state a claim upon which federal habeas relief may be granted. Moreover, a break in the chain of custody generally goes to the weight of the evidence, not its admissibility. *See United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010). The record indicates that the surveillance video footage was secured by police from the church, transferred to a police computer, and distributed.

Petitioner neither alleges nor establishes that the recording was tampered with, that it failed to depict events accurately, or that additional footage would have been exculpatory. Petitioner fails to show that the trial court erred in admitting the surveillance video footage or that its admission otherwise deprived him of a fundamentally fair trial. The Court will therefore deny the claim.

IV.   <u>Insufficient Evidence Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his arson conviction.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

Habeas challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than the federal habeas court—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions

should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788–89.

Under Michigan law, the elements of arson of a dwelling are: (1) the defendant willfully or maliciously burned a dwelling house; and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a very high risk of burning the house, knew of that risk, and disregarded it. Mich. Comp. Laws § 750.72. As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Yost*, 278 Mich. App. 341, 356 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997).

The Michigan Court of Appeals denied relief on this claim and explained that:

There was sufficient evidence presented to establish defendant's identity. The victim's son testified that defendant was alone in the home with defendant before the fire. A phone, registered to defendant, and a phone case were found on the porch of the home. The phone case had water and fire damage. The descriptions of the car the perpetrators arrived in matched several of the witnesses' description of defendant's red Camaro. The surveillance video and still images taken from the church showed a vehicle that looked similar to defendant's car, and the

> video footage of the movement of the vehicle to and from the home the night of the fire matched witness testimony. "Circumstantial evidence and reasonable inferences that arise from [the] evidence can constitute satisfactory proof of the elements of the crime."

*Petitioner*, 2014 WL 6602604 at *6. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The evidence at trial revealed that Petitioner was at the victim's house shortly before the shooting and arson, and that he was driving his wife's 1997 red Camaro with black t-tops that night, which was similar to the vehicle observed at the scene of the crime. *See* ECF 7, PgID 121. The surveillance video footage showed two men setting the fire and exiting the house. *Id.* One of the men had his shoe or lower leg on fire, stamped it out, got in the driver's side for a moment, attempted to return to the burning house but stopped when an explosion occurred, and then fled the scene in the car along with the other man. *Id.* at 121–22. One of the victim's roommates saw a man running from the house toward a red car while the house was on fire. *Id.* at 121. Petitioner's cell phone was found on the front porch steps of the house after the fire. *Id.* at 122. Petitioner's cell phone records showed that he had used his phone consistently until the time of the fire. *Id.* Such evidence, viewed in a light favorable to the prosecution, was sufficient to establish Petitioner's guilt.

Petitioner merely challenges the inferences the jury drew from the testimony presented at trial and the jury's witness credibility determinations. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *See Cavazos*, 565 U.S. at 7. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner

was one of the two men who committed the arson. More importantly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect was reasonable. The Court will therefore deny the claim.

V.   Disproportionate Sentence Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because his sentence constitutes cruel and unusual punishment.

Petitioner challenged his sentence on direct appeal, arguing that his sentence was disproportionate. The Michigan Court of Appeals denied Petitioner relief and found that his sentence was within the guideline range and was presumptively proportionate. *Petitioner*, 2014 WL at 6602604 at *6.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Claims which arise from the sentence imposed by a state trial court are not normally cognizable on habeas review unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentence is within the statutory maximum sentence for arson of a dwelling. *See* Mich. Comp. Laws § 750.72 (authorizing a sentence of life imprisonment or any term of years).

Petitioner's claim that his sentence is disproportionate is not cognizable on federal habeas review because it is a state law claim. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (ruling that the Eighth Amendment does not require strict proportionality and that a Michigan prisoner's claim that his sentence was

disproportionate was not cognizable on habeas review). There is no federal constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67–68. Petitioner thus fails to state a claim upon which federal habeas relief may be granted.

Moreover, Petitioner fails to establish that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin*, 501 U.S. at 965. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (internal citation omitted). As discussed, Petitioner's sentence of 10 years 8 months to 20 years imprisonment is within the statutory maximum of life imprisonment. The state trial court thus acted within its discretion when imposing Petitioner's sentence, and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.[2] The Court will therefore deny the claim.

## CONCLUSION

For the above-stated reasons, Petitioner is not entitled to federal habeas relief on his claims. Before Petitioner may appeal the Court's decision, a certificate of

---

[2] Given that Petitioner's claim is not cognizable on federal habeas review, the Court need not address the exhaustion issue.

appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. The Court denies a certificate of appealability. It also denies leave to proceed in forma pauperis on appeal because an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 21, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 21, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

24